UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION


STEPHANIE HAMILTON,

      Plaintiff,

v.                                                                      Case No. 8:25-cv-235-CPT

FRANK BISIGNANO,
COMMISSIONER OF THE SOCIAL
SECURITY ADMINISTRATION,[1]

      Defendant.

_____/


**O R D E R**

The Plaintiff seeks judicial review of the Commissioner's denial of her application for Supplemental Security Income (SSI). For the reasons discussed below, the Commissioner's decision is affirmed.

I.

The Plaintiff was born in 1981, has a ninth-grade education, and has past relevant work experience in the food service and retail industries. (R. 236, 241). In June 2021, the Plaintiff applied for SSI, alleging disability as of July 2019 due to

---

[1] Mr. Bisignano became the Commissioner of Social Security on May 6, 2025. Pursuant to Federal Rule of Civil Procedure 25(d), Mr. Bisignano is substituted for the former Acting Commissioner, Mr. Leland Dudek, as the Defendant in this suit.

migraines, neuropathy, anxiety, memory loss, back surgeries, and degenerative disc disease. (R. 211, 240). The Social Security Administration (SSA) denied the Plaintiff's application both initially and on reconsideration. (Doc. 13 at 1).

At the Plaintiff's request, an Administrative Law Judge (ALJ) conducted a hearing on the matter in September 2023. (R. 18). The Plaintiff was accompanied by a representative at that proceeding and testified on her own behalf. (R. 18, 47). A vocational expert (VE) also testified. (R. 18, 60).

In a decision issued in December 2023, the ALJ determined that the Plaintiff (1) had not engaged in any substantial gainful activity since her application date in June 2021; (2) had the severe impairments of osteoarthritis (bilateral hips), anorexia nervosa, migraine headaches, generalized anxiety disorder, schizoaffective disorder (depressive type), and cervical, thoracic, and lumbar degenerative disc disease; (3) did not, however, have an impairment or combination of impairments that met or medically equaled the severity of any of the listings;[2] (4) had the RFC to perform light work subject to certain limitations;[3] and (5) had no past relevant work but was capable

---

[2] The listings are found at 20 C.F.R. Pt. 404, Subpt. P, App'x 1, and catalog those impairments that the SSA considers significant enough to prevent a person from performing any gainful activity. *See* 20 C.F.R. § 416.920(a)(4)(iii). When a claimant's affliction matches an impairment in the listings, the claimant is automatically entitled to disability benefits. *See id.*; *see also Edwards v. Heckler*, 736 F.2d 625, 628 (11th Cir. 1984).

[3] These limitations were that the Plaintiff could frequently crouch, kneel, balance, climb ramps, or climb stairs; could occasionally crawl, stoop, or climb ladders, ropes, or scaffolds; should not work around extremes of cold or heat, noise levels louder than a typical office environment, concentrated vibration, concentrated respiratory irritants, or hazards, such as open moving machinery or unprotected heights; could understand, remember, carry out, and exercise judgment for simple tasks; and should work in an environment with few day-to-day changes in terms of work duties, work settings, or work processes. (R. 25).

of making a successful adjustment to other jobs which exist in significant numbers in the national economy. (R. 20–36). In light of these findings, the ALJ concluded that the Plaintiff was not disabled. (R. 36).

The Appeals Council denied the Plaintiff's request for review. (R. 5). Accordingly, the ALJ's decision became the final decision of the Commissioner. *Viverette v. Comm'r of Soc. Sec.*, 13 F.4th 1309, 1313 (11th Cir. 2021).

## II.

The Social Security Act defines disability as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than [twelve] months." 42 U.S.C. § 1382c(a)(3)(A); *see also* 20 C.F.R. § 416.905(a).[4]    A physical or mental impairment under the Act "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(3)(D).

To determine whether a claimant is disabled, the Social Security Regulations prescribe "a five-step, sequential evaluation process." *Carter v. Comm'r of Soc. Sec.*, 726 F. App'x 737, 739 (11th Cir. 2018) (per curiam) (citation omitted).[5]    Under this process, an ALJ must assess whether the claimant: (1) is performing substantial gainful

---

[4] Unless otherwise indicated, citations to the Code of Federal Regulations are to the version in effect at the time of the ALJ's decision.

[5] Unpublished opinions are not considered binding precedent but may be cited as persuasive authority. 11th Cir. R. 36-2.

activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals one of the listings; (4) has the Residual Functional Capacity (RFC) to engage in her past relevant work; and (5) can perform other jobs in the national economy given her RFC, age, education, and work experience. *Id.* (citing *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004); 20 C.F.R. § 416.920(a)(4)). Although the claimant bears the burden of proof through step four, the burden temporarily shifts to the Commissioner at step five. *Goode v. Comm'r of Soc. Sec.*, 966 F.3d 1277, 1278–79 (11th Cir. 2020) (citation omitted); *Sampson v. Comm'r of Soc. Sec.*, 694 F. App'x 727, 734 (11th Cir. 2017) (per curiam) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)). If the Commissioner carries that burden, the claimant must then prove that she cannot engage in the work identified by the Commissioner. *Goode*, 966 F.3d at 1279. In the end, "'the overall burden of demonstrating the existence of a disability . . . rests with the claimant.'" *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018) (quoting *Doughty v. Apfel*, 245 F.3d 1274, 1280 (11th Cir. 2001)).

A claimant who does not prevail at the administrative level may seek judicial review in federal court provided the Commissioner has issued a final decision disposing of the claimant's disability application after a hearing. 42 U.S.C. § 405(g). Judicial review is confined to determining whether the Commissioner applied the correct legal standards and whether the Commissioner's decision is buttressed by substantial evidence. *Id.*; *Hargress v. Soc. Sec. Admin.*, *Comm'r*, 883 F.3d 1302, 1305 n.2 (11th Cir. 2018) (per curiam) (citation omitted). Substantial evidence is "more than a

4

mere scintilla" and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (internal quotation marks and citations omitted). In evaluating whether substantial evidence bolsters the Commissioner's decision, a court may not decide the facts anew, reweigh the evidence, or make credibility determinations. *Viverette*, 13 F.4th at 1314 (citation omitted); *Carter*, 726 F. App'x at 739 (citing *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam)). While a court will defer to the Commissioner's factual findings, it will not defer to his legal conclusions. *Viverette*, 13 F.4th at 1313–14; *Keeton v. Dep't of Health & Hum. Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citations omitted).

## III.

The Plaintiff raises three challenges on appeal: (1) the ALJ's RFC assessment regarding the Plaintiff's mental limitations is not supported by substantial evidence; (2) the ALJ erred in evaluating the Plaintiff's subjective complaints of pain and other symptoms; and (3) the ALJ neglected to consider whether the Plaintiff's migraine disorder was medically equivalent to one of the listings. (Doc. 13). Each of these challenges will be addressed in turn.

## A.

Where, as here, a claimant presents a "colorable" claim of a mental impairment, an ALJ must apply the regulatorily-mandated Psychiatric Review Technique (PRT) at step two and/or three. *See Moore*, 405 F.3d at 1213–14 (citation omitted); *see also Cannon v. Astrue*, 2011 WL 4346566, at *5 (M.D. Fla. Sept. 16, 2011) (observing that the PRT can be undertaken at steps two and three) (citation omitted). This technique

requires an assessment of how a claimant's mental impairment affects four broad functional areas (known as the Paragraph B criteria): (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. 20 C.F.R. § 416.920a(c)(3). The Regulations dictate that after applying the PRT, an ALJ must provide a specific explanation for his determinations, including the degree of limitation found in each area. *Id.* §§ 416.920a(c)(4), (e)(4).

The PRT is separate and apart from an ALJ's RFC determination at step four, which dictates that the ALJ gauge a claimant's maximum ability to do work despite her impairments, both severe and non-severe. *See Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1268–69 (11th Cir. 2019) (per curiam) (noting that "[c]onsideration of all impairments, severe and non-severe, is required when assessing a claimant's RFC") (citing *Bowen v. Heckler*, 748 F.2d 629, 634–35 (11th Cir. 1984)). The RFC analysis at step four therefore represents a more detailed assessment of a claimant's ability to function than the one performed at the earlier stages. *See Buckwalter v. Acting Comm'r of Soc. Sec.*, 5 F.4th 1315, 1325 (11th Cir. 2021) (citing *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011)); *see also* Soc. Sec. Ruling (SSR) 96-8p, 1996 WL 374184, at *4 (July 2, 1996) (stating that the criteria used to rate the severity of mental impairments at a prior step do not equate to a step four RFC determination, which involves a "more detailed" evaluation that obligates an ALJ to "itemiz[e] various functions contained in the [four] broad" areas).

In this case, as noted above, the ALJ found at step two that the Plaintiff had the severe mental impairments of anorexia nervosa, generalized anxiety disorder, and schizoaffective disorder (depressive type).  (R. 21).  After applying the PRT at step three, the ALJ determined that the Plaintiff had mild limitations in both understanding, remembering, or applying information and interacting with others, as well as moderate limitations in both concentrating, persisting, or maintaining pace and adapting or managing oneself.  (R. 23–24).

At step four, building on his PRT assessment, the ALJ again reviewed the evidence pertaining to the Plaintiff's mental condition.  (R. 25–34).  This evidence spanned the period from 2019 to 2023 and included the Plaintiff's mental health symptoms described in function reports[6] and other records; the treatment the Plaintiff did or did not receive for her mental impairments; mental status examinations the Plaintiff underwent; and the Plaintiff's medication management that involved, among other drugs, two antipsychotics.  (R. 26, 30–33).  After engaging in a detailed examination of all this information, the ALJ found, *inter alia*, that while the Plaintiff's symptoms, "persistent anxiety," and "need for a heavy regular medication regimen" limited "her ability to concentrate, persist, and maintain pace[ ] and to adapt and manage oneself in a work setting," the "evidence as a whole support[ed] that she

---

[6] Function reports outline how a claimant's physical and mental conditions impact her ability to work, care for herself, perform household tasks, and engage in other tasks.  *See* (R. 26); *see* also *Highfield v. Saul*, 2020 WL 5706120, at *11 (S.D. Fla. Sept. 24, 2020) (stating that a function report "help[s] guide" an ALJ when conducting an RFC assessment).

would be expected to perform simple work in a fairly static work environment." (R. 33).

Along with the above evidence and of import here, the ALJ also evaluated the mental assessments of two state agency psychological consultants, Dr. Eric Weiner and Dr. Mercedes DeCubas. (R. 33–34). As set forth in the ALJ's decision, both of these providers determined that the Plaintiff "had no more than mild limitations in mental functioning." (R. 33). The ALJ deemed these assessments to be unpersuasive, however, because they were rendered early on in the process and did not account for some of the Plaintiff's mental restrictions. As the ALJ explained:

> [Drs. Weiner and DeCubas] noted that there was little mental health treatment documented in the record at the time of their reviews; however, the fully developed record at the hearing level does reflect fairly consistent behavioral health treatment since early 2022. Although significant mental health complaints are not documented in the early medical evidence of record, these later records do reflect mood symptoms, anxiety, anhedonia, anergia, and hallucinations, which are generally well controlled on a fairly high medication regimen. Given the [Plaintiff']s recent treatment records even with her response to medication, the undersigned finds the record is sufficient to support moderate limitations in concentrating, persisting, or maintaining pace and adapting or managing oneself, and limiting the [Plaintiff] to simple tasks in a work environment with few day-to-day changes.

(R. 33–34).

While not entirely clear, the Plaintiff now appears to contend that the ALJ impermissibly played doctor by relying on his own "lay interpretation" of the medical records after having rejected the opinions offered by Drs. Weiner and DeCubas. (Doc. 13 at 6–11). The Plaintiff adds that without a medical expert's assessment regarding

the Plaintiff's "complex" mental health impairments, the ALJ's RFC amounts to "nothing more than a speculative hunch." *Id*. at 9–10.

It is well established that an ALJ may not arbitrarily substitute his own opinion for that of a medical professional. *See Freeman v. Schweiker*, 681 F.2d 727, 731 (11th Cir. 1982) (per curiam); *see also Marbury v. Sullivan*, 957 F.2d 837, 840–41 (11th Cir. 1992) (per curiam) (Johnson, J., concurring specially); *Siracuse v. Acting Comm'r of Soc. Sec. Admin*., 2017 WL 2644615, at *5 n.7 (M.D. Fla. June 20, 2017) (citation omitted). Such a scenario may occur where an ALJ "play[s] doctor" and takes it upon himself to analyze medical evidence beyond his ken, rather than confine himself to his proper role as "an adjudicator responsible for assessing [a claimant's] RFC" and for evaluating the medical opinions of record. *Castle v. Colvin*, 557 F. App'x 849, 853–54 (11th Cir. 2014) (per curiam); *see also Rosario v. Comm'r of Soc. Sec.*, 2018 WL 5300202, at *4 (M.D. Fla. Aug. 23, 2018) (deeming the ALJ to have improperly "played doctor" when she formed her own judgment about the appropriate treatment for the claimant) (citations omitted), *report and recommendation adopted*, 2018 WL 5293230 (M.D. Fla. Oct. 25, 2018).

An ALJ does not "play doctor," however, merely by determining a claimant's RFC based upon his review of the record as a whole. *Castle*, 557 F. App'x at 853–54. Indeed, the pertinent regulations obligate an ALJ to render such an assessment. *See id.*; *see also Moore v. Soc. Sec. Admin., Comm'r*, 649 F. App'x 941, 945 (11th Cir. 2016) (per curiam).

9

Moreover, of significance to the Plaintiff's challenge, there is no directive that an ALJ must ground his RFC finding on a medical source opinion. *Castle*, 557 F. App'x at 854 (ruling the district court erred in necessitating that the ALJ's RFC determination be predicated on a medical source opinion); *Green v. Soc. Sec. Admin.*, 223 F. App'x 915, 923–24 (11th Cir. 2007) (per curiam) (upholding the ALJ's RFC determination even though it conflicted with the only medical opinion of record, which the ALJ discredited); *Gray v. Comm'r of Soc. Sec.*, 2019 WL 3934441, at *9 (M.D. Fla. Aug. 20, 2019) ("The [c]laimant has failed to cite any authority—and the [c]ourt is unaware of any—creating a rigid requirement that the ALJ's RFC determination must be supported by a medical opinion."); *Falberg v. Colvin*, 2015 WL 12840465, at *5 (M.D. Fla. July 16, 2015) (dismissing the claimant's argument that the ALJ acted on "his own hunch" where the ALJ "made a well-reasoned determination in accordance with his duty to assess the evidence"). Instead, all that is necessary is that the ALJ's RFC finding be buttressed by substantial evidence. *Sims v. Comm'r of Soc. Sec.*, 706 F. App'x 595, 602 (11th Cir. 2017).

It is evident from the ALJ's decision that his mental RFC findings are adequately substantiated by the record here. As referenced above, the ALJ evaluated the paragraph B criteria and explained why he imposed mild limitations pertaining to the areas of understanding, remembering, or applying information and interacting with others, and moderate limitations relative to the domains of maintaining concentration, persistence, or pace and adapting or managing herself. (R. 23–24). The ALJ then detailed the Plaintiff's self-reports and the medical evidence relating to her

10

mental conditions, including her demands for certain drugs, her refusal of other drugs, and her repeated emergency department visits where no significant mental health complaints were noted.  (R. 30–33) (citing R. 324–406, 432–588, 589–626, 699–848, 862–953).  The ALJ also discussed mental status observations of the Plaintiff's psychiatrist, including that the Plaintiff exhibited depressed and irritable mood and affect, delusional and paranoid thought content, fair insight, and limited judgment. (R. 31–32).  The ALJ balanced those observations, however, with unremarkable mental health-related findings in the record, such as the Plaintiff's intact attention, concentration, memory, and orientation.  *Id.*

In addition, the ALJ highlighted the Plaintiff's admitted improvement with medication.  (R. 31–32).  This included the Plaintiff's statements in mid-to-late 2022 that she was "doing a lot better" as far as her mood, appetite, insight, and judgment were concerned, at least in part due to the drugs she was prescribed.  (R. 31).  It also included evidence that by 2023 and after a further adjustment of her medication, the Plaintiff displayed, inter alia, "intact attention, concentration, and memory" and reported apparent progress in her mood and other symptoms.  (R. 31–32).

In light of these determinations by the ALJ and his thorough consideration of the entirety of the record, substantial evidence bolsters his mental RFC findings.  The Plaintiff's claim that the ALJ impermissibly "played doctor" therefore fails.  *See Sims*, 706 F. App'x at 604; *Castle*, 557 F. App'x at 853–54.

In an attempt to avoid this outcome, the Plaintiff relies on *Brightmon v. Comm'r of Soc. Sec. Admin.*, 743 F. App'x 347 (11th Cir. 2018) and *Highfield v. Saul*, 2020 WL

5706120 (S.D. Fla. Sept. 24, 2020). Both of these cases are readily distinguishable from the circumstances presented here.

In *Brightmon*, the Eleventh Circuit ruled that the ALJ erred in assigning "great weight" to a state agency medical consultant's findings because the medical record was "much more developed regarding [the claimant's] physical impairments" after the consultant rendered his assessment. 743 F. App'x at 352–53. The court also pointed out that no expert—apart from a subsequent consultative physician, whose opinion the ALJ declined to credit—expressed an opinion about what these later records meant for the claimant's ability to work despite his impairments. *Id*. at 353. The court additionally observed that because the ALJ's RFC mirrored an RFC crafted before the later evidence existed, it was "difficult to say that the ALJ properly '[took] into account and evaluate[d] the record as a whole.'" *Id*. (quoting *McCruter v. Bowen*, 791 F.2d 1544, 1548 (11th Cir. 1986)). The court commented as well that the ALJ's rejection of the subsequent consultative physician's assessment was faulty to the extent the ALJ disregarded evidence which was consistent with that assessment and to the extent the ALJ improperly substituted his own judgment for that of a medical expert. *Id*. at 353–54.

In this case, unlike in *Brightmon*, it is apparent from the ALJ's decision that he considered the entirety of the record in making his mental RFC findings and that he did not simply base his determinations on a narrow array of materials obtained at an earlier juncture in the process. In fact, as recounted above, the whole rationale for the ALJ's rejection of the opinions of the two state agency psychological consultants, Drs.

12

Weiner and DeCubas, was that they were not predicated on a "fully developed record" which post-dated the providers' assessments. (R. 33–34). Furthermore, while the ALJ in *Brightmon* was deemed to have wrongly relied on his own medical judgment instead of that of the subsequent consultative physician, the ALJ here provided objective grounds for not crediting Drs. Weiner and DeCubas's opinions (R. 33), grounds with which the Plaintiff notably agrees (Doc. 13 at 6). *Brightmon* is thus of no help to the Plaintiff here.

In *Highfield*, the court found that the ALJ did not properly evaluate the claimant's post-traumatic stress disorder (PTSD) and other mental impairments, as well as their attendant restrictions. 2020 WL 5706120, at *10–13. In support of this conclusion, the court noted, inter alia, that the ALJ ignored evidence indicating the claimant suffered from PTSD, that "there [wa]s no evidence that the [claimant's mental health issues were] being controlled by medication," and that "there [wa]s no information in the record as to how the [claimant's condition] would limit [her] ability to work on a daily basis." *Id*. at 12. For the reasons set forth above, none of these deficiencies are present here. As a result, *Highfield* is likewise of no help to the Plaintiff.

To stave off defeat of her first challenge, the Plaintiff seemingly suggests in the alternative that the ALJ should have solicited additional medical opinions and/or consultations to further develop the record. *See* (Doc. 13 at 8–9). To the extent the Plaintiff makes such an argument, it too is unavailing.

A claimant seeking remand on the theory that an ALJ did not secure a consultative examination bears the burden of demonstrating not only that the ALJ

13

erred in forgoing such an examination, but also that the claimant was harmed by the ALJ's decision on the subject.  *See Mosley v. Comm'r of Soc. Sec.*, 633 F. App'x 739, 742 (11th Cir. 2015) (per curiam) (citing *Brown v. Shalala*, 44 F.3d 931, 935 (11th Cir. 1995)).  To establish the requisite harm, a claimant must show that there are evidentiary gaps in the record that result in unfairness or "clear prejudice" warranting remand.  *Id.*; *see also Goode*, 966 F.3d at 1280 (observing that "[r]emand for further factual development of the record . . . is appropriate where the record reveals evidentiary gaps which result in unfairness or clear prejudice") (internal quotation marks and citation omitted); *Riley v. Comm'r of Soc. Sec.*, 2023 WL 2894366, at *4 (M.D. Fla. Apr. 11, 2023) ("An ALJ need not obtain additional information, seek expert medical testimony, nor order a consultative examination when the record is sufficient to make a disability determination.") (citing *Sarria v. Comm'r of Soc. Sec.*, 579 F. App'x 722, 724 (11th Cir. 2014)).  If the record is complete on the other hand, the ALJ may determine the RFC from the record.  *Riley*, 2023 WL 2894366, at *4.

Here, at a minimum, the Plaintiff does not specify any meaningful evidentiary gaps that would result in unfairness or clear prejudice.  It is telling in this respect that, as the Commissioner points out, the Plaintiff does not delineate what additional restrictions the record supposedly supports or what limitations the RFC purportedly lacks.  (Doc. 15 at 8).

B.

The Plaintiff's second claim of error—as noted above—is that the ALJ erred in evaluating the Plaintiff's subjective complaints of pain and other symptoms. This challenge is meritless as well.

As discussed previously, part of the ALJ's role at step four is to determine a claimant's RFC. *See* 20 C.F.R. §§ 416.920(a)(4)(iv), 416.945. To do so, an ALJ must ascertain based upon all of the pertinent evidence before him what a claimant can do in a work setting despite any physical or mental restrictions caused by her impairments and related symptoms. *Id.*; § 416.945(a)(1). In making this assessment, the ALJ must consider any medical opinions of record, all of the claimant's medically determinable impairments, the total limiting effects of each impairment, and the claimant's subjective symptoms. *Id.* §§ 416.920(e), 416.945(a)(3); *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987).

The evaluation of a claimant's subjective complaints is governed in the Eleventh Circuit's "pain standard." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (per curiam). Under this standard, a claimant must show "(1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from the condition or (3) that the objectively determined medical condition is of such severity that it can be reasonably expected to give rise to the alleged pain." *Id.* (quoting *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (per curiam)).

15

If a claimant meets the pain standard, the ALJ must then assess the intensity and persistence of the claimant's symptoms to determine how they interfere with her capacity to work. 20 C.F.R. § 416.929(c)(3). The considerations pertinent to this analysis include: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate her pain or other symptoms; (5) treatment (other than medication) the claimant receives or has received for relief of her pain or other symptoms; (6) any measures the claimant uses or has used to relieve her pain or other symptoms; and (7) other factors concerning the claimant's functional limitations due to pain or other symptoms. *Id.*

After evaluating "a claimant's complaints of pain, the ALJ may reject them as not creditable, and that determination will be reviewed [on appeal] for substantial evidence." *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992) (per curiam) (citing *Wilson v. Heckler*, 734 F.2d 513, 517 (11th Cir. 1984)). In rendering this determination, the ALJ "need not cite particular phrases or formulations," so long as the reviewing court can be satisfied that the ALJ "considered [the claimant's] medical condition as a whole." *Chatham v. Comm'r of Soc. Sec.*, 764 F. App'x 864, 868 (11th Cir. 2019) (per curiam) (internal quotation marks and citation omitted); *see also Stowe v. Soc. Sec. Admin., Comm'r*, 2021 WL 2912477, at *4 (11th Cir. July 12, 2021) (per curiam) (explaining that if an ALJ does not identify specific and adequate reasons for rejecting a claimant's pain-related testimony, "the record must be obvious as to the [ALJ's]

16

credibility finding") (citing *Foote v. Chater*, 67 F.3d 1553, 1561–62 (11th Cir. 1995) (per curiam)).   A reviewing court will not disturb an ALJ's clearly articulated credibility finding that is buttressed by substantial evidence.   *Foote*, 67 F.3d at 1562 (citation omitted).

In this case, the ALJ discussed the Plaintiff's subjective complaints, along with the Eleventh Circuit's pain standard and the ALJ's duty to account for all symptoms and the degree to which those symptoms could reasonably be accepted as conforming to the objective medical evidence and other evidence based on the applicable legal requirements.   (R. 25) (citing 20 C.F.R. § 416.929; SSR 16-3p, 2016 WL 1119029; 20 C.F.R. § 416.920c).   The ALJ also made the following express credibility finding regarding the Plaintiff's subjective complaints:

> [T]he [Plaintiff's] medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the [Plaintiff's] statements concerning the intensity, persistence[,] and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

(R. 27).   After a lengthy review of the Plaintiff's testimony and the relevant medical records (R. 26–33), the ALJ concluded as part of his RFC determination that—as described earlier—the Plaintiff could perform light work subject to certain restrictions, including that she should limit physically exertive activities, such as crawling, stooping, and climbing ladders; that she should not work around extreme heat, cold, and/or "concentrated levels of vibration;" and that she should not work around noise

17

levels beyond that of a "typical office level," while also avoiding "concentrated respiratory irritants."   (R. 34).

The Plaintiff now argues that the ALJ's placed an "undue focus on objective medical findings" in the record in discounting the Plaintiff's subjective complaints and improperly downplayed the Plaintiff's "extensive pain management." (Doc. 13 at 15). This contention is unavailing.

To begin, it is undisputed that in making his credibility determination, the ALJ thoroughly recounted the Plaintiff's subjective complaints of pain from both her hearing testimony and in her function reports, including pain stemming from her migraines and pain she experienced in her back and hips.  (Doc. 13 at 15) (conceding that the ALJ provided a "detailed" analysis of the Plaintiff's testimony which was "quite thorough[ ]").  It is also uncontested that the ALJ engaged in a robust review of the Plaintiff's medical treatment history and the objective medical evidence in the record in arriving at his credibility assessment.  *See id.* (making a similar concession relative to the Plaintiff's medical treatment history).

With respect to the Plaintiff's medical treatment history, the ALJ considered the Plaintiff's surgeries, as well as her pain management medication and injections. *See* (R.  27–28,  106,  360) (citing  R.  589–626,  699–848);  *see  also*  20  C.F.R. §§ 416.929(c)(3)(iv), (v) (explaining that the factors relevant to symptoms include the type, dosage, effectiveness, and side effects of medications, and treatment, other than medication, an individual receives).  By way of example, the ALJ noted that the Plaintiff underwent lumbar spinal laminectomies in 2007, 2019, and 2021 (R. 27–28)

18

(citing R. 432–588, 699–848, 862–953), and that she also underwent caudal epidural injections, facet blocks, cervical rhizotomy, and a sacroiliac joint injection, all of which provided significant, albeit temporary, improvement (R. 28–30, 1005–10) (citing R. 862–953, 1044–62, 1097–1110).  The ALJ recognized as well that the Plaintiff received pain management medication with Tylenol #3 and tizanidine.  (R. 27–30).

As for the objective medical evidence, the ALJ reviewed documentation which pre-dated the Plaintiff's SSI application and which related to a lumbar hemilaminectomy she received, MRI findings showing degenerative disc disease throughout her spine, and a history of migraines.  (R. 27). Closer in time to the Plaintiff's application date, the ALJ noted that imaging of the Plaintiff's spine showed degenerative and postoperative changes but that x-rays of her left hip and shoulder were negative.  (R. 28, 346, 386, 430–31, 511–13, 544, 601, 653–54, 876, 947, 1112–14).  The ALJ also acknowledged that, in July 2021, the Plaintiff reported an increase in the frequency of her migraines (R. 28, 413).  In addition, the ALJ referenced abnormal examination findings, such as tenderness to palpation in the Plaintiff's spine and hips and slightly decreased bilateral hip strength.  (R. 28–30, 424, 508, 659).

Of significance here, however, the ALJ pointed out that there were unremarkable objective findings in the record too, including findings that the Plaintiff exhibited regular strength, normal reflexes, a full range of motion, and intact sensation. (R. 28–30, 424, 434, 442, 535, 659, 670, 1116–33).  The ALJ further observed that the Plaintiff reported to her physicians in April 2021 following a surgery that medication was "effective in controlling" her back and leg pain.  (R. 27) (citing R. 324–406, 432–

588).  The ALJ also noted that, in October 2021, the Plaintiff admitted that although she did not cook, clean, and do other household chores, it was not because she could not do so but because "someone did these tasks for her."  (R. 28) (citing R. 627–64). The ALJ additionally noted that, at a January 2022 appointment, the Plaintiff again reported that her leg and back pain had improved due to medical procedures and medication, at least temporarily.  (R. 29).

Moreover, the ALJ recounted that, in 2022 and 2023, the Plaintiff underwent further x-rays of her torso, as well as other medical tests, to probe her reports of pain in these areas and that these procedures seemingly yielded unremarkable results.  (R. 29) (citing R. 1063–87, 1097–1110, 1111–14).  The ALJ observed as well that multiple physician examinations of the Plaintiff during this time were likewise unremarkable. (R. 29–30) (citing R. 1115–40).  And lastly, the ALJ analyzed evidence from multiple sources which reportedly reflected that the Plaintiff's experienced "good relief from conservative pain management procedures."  (R. 32) (citing R. 699–848, 862–953, 1063–87, 1097–1110).[7]

Given the foregoing, the Court finds that the ALJ's evaluation of the Plaintiff's subjective complaints complied with the Eleventh Circuit's pain standard and that the ALJ's credibility determination is sufficiently supported by the information before

---

[7] The Court is aware that the ALJ covered more evidence underlying his RFC determination than that outlined above.  *See, e.g.,* (R. 32) (discussing evidence addressing, *inter alia*, Plaintiff's weight and Chronic Obstructive Pulmonary Disease).  The Court nonetheless largely confines its evidentiary review to the items in the record that concern the Plaintiff's leg, hip, and back pain, since those are the areas of focus in the Plaintiff's second challenge. (Doc. 13 at 12–17).

him.  The ALJ set forth specific and adequate grounds for attributing diminished weight to the Plaintiff's reported symptoms and bolstered that assessment by citing to specific evidence in the record, including objective medical tests, examination findings, and the Plaintiff's own self-reports of pain improvement. *See Dyer*, 395 F.3d at 1210 (citing *Foote*, 67 F.3d at 1561–62).  To the extent the Plaintiff now invites the Court to reweigh this evidence, the Court is prohibited from doing so.  *Viverette*, 13 F.4th at 1314 (citation omitted).

C.

The Plaintiff's third claim of error—as mentioned earlier—is that the ALJ did not properly evaluate whether her migraines medically equaled a listed impairment. (Doc. 13 at 18–21).  This challenge meets the same fate as the Plaintiff's other two challenges.

A claimant bears the burden of proving that one or more of her afflictions "meet[ ]" or "equal[ ]" a listed impairment. *See Bellew v. Acting Comm'r of Soc. Sec.*, 605 F. App'x 917, 920 (11th Cir. 2015) (per curiam) (citing *Barron v. Sullivan*, 924 F.2d 227, 229 (11th Cir. 1991)).  To "meet" a listing, "a claimant must have a diagnosis included in the Listings" and must also supply medical reports showing that her malady fulfills "the specific criteria of the Listings and the duration requirement." *Wilson v. Barnhart*, 284 F.3d 1219, 1224 (11th Cir. 2002) (per curiam) (internal quotation marks and citation omitted).  And to "equal" a listing, "the medical findings must be at least equal in severity and duration to the listed findings." *Id.* (internal quotation marks and citation omitted). An ALJ's determination as to whether a claimant meets a listing

21

may be implied from the record. *Davenport v. Astrue*, 403 F. App'x 352, 354 (11th Cir. 2010) (citing *Hutchison v. Bowen*, 787 F.2d 1461, 1463 (11th Cir. 1986)).

The listing in question here is Paragraph B of Listing 11.02 (known as Listing 11.02B), which defines a sub-category of epilepsy. According to the SSA, Listing 11.02B is the listing "most closely analogous" to the listed impairment for primary headache disorder. *See* SSR 19-4p, 2019 WL 4169635, at *7. The strictures of Listing 11.02B are set forth in SSR 19-4p, which states, in relevant part:

> Paragraph B of listing 11.02 requires dyscognitive seizures occurring at least once a week for at least [three] consecutive months despite adherence to prescribed treatment. To evaluate whether a primary headache disorder is equal in severity and duration to the criteria in 11.02B, we consider: A detailed description from an [acceptable medical source] of a typical headache event, including all associated phenomena (for example, premonitory symptoms, aura, duration, intensity, and accompanying symptoms); the frequency of headache events; adherence to prescribed treatment; side effects of treatment (for example, many medications used for treating a primary headache disorder can produce drowsiness, confusion, or inattention); and limitations in functioning that may be associated with the primary headache disorder or effects of its treatment, such as interference with activity during the day (for example, the need for a darkened and quiet room, having to lie down without moving, a sleep disturbance that affects daytime activities, or other related needs and limitations).

*Id*. at *7.

The Plaintiff now argues that the ALJ should have considered whether her migraines fell within the ambit of Listing 11.02B. (Doc. 13 at 18–21). In an effort to bolster this contention, the Plaintiff asserts that she "reported symptoms of, and required treatment for, migraines occurring regularly for more than three consecutive

months" and that there is this a "substantial question" whether her condition equals the listing." (Doc. 13 at 20–21).

There are a number of flaws with the Plaintiff's challenge. As an initial matter, SSR 19-4p cautions that is "uncommon" for a claimant with primary headache disorder to display equivalent signs and limitations to those detailed in Listing 11.02B. *See* 2019 WL 4169635, at \*7 ("While *uncommon*, a person with a primary headache disorder may exhibit equivalent signs and limitations to those detailed in listing 11.02[.]") (emphasis added). Consistent with this observation, the Plaintiff seemingly admits—at least tacitly—that she does not satisfy the elements of Listing 11.02B, which necessitate a migraine headache occurring at least once a week for three consecutive months despite adherence to prescribed treatment. *See* 20 C.F.R. pt. 404, subpt. P, app. 1 § 11.02B. As the Plaintiff acknowledges in this respect, she testified at the hearing to only experiencing migraines roughly once every two weeks, which falls short of the once-a-week for three consecutive months criterion. *See* (R. 59–60); *see* (Doc. 13 at 20).

Putting aside this issue, the Plaintiff's present claim that she experiences migraines once-per-fortnight is undermined by the fact that she did not make any such assertion to her medical providers. (R. 347, 365, 378, 413, 559). To the contrary, as the ALJ commented, the record shows that there was no follow-up relative to the Plaintiff's migraines after July 2021, which was just one month after her application date. (R. 30, 347–51, 413–18).

Moreover, to show equivalence to Listing 11.02B in accordance with SSR 19-4p, a claimant must provide—as mentioned above—a detailed description from an acceptable medical source of a typical headache event, including associated phenomena, the frequency of headache events, adherence to prescribed treatment, side effects of treatment, and limitations in functioning, such as an interference with activities throughout the day. *See* 2019 WL 4169635, at *7. The Plaintiff, however, does not point to a single statement from an acceptable medical source that could meaningfully satisfy these demands. (Doc. 13 at 18–21).

Notwithstanding these deficiencies, the Plaintiff contends that remand is nevertheless warranted because it cannot be discerned from the ALJ's decision that he actually addressed the applicability of Listing 11.02B. (Doc. 13 at 21). This contention is similarly meritless.

While it is true that the ALJ did not explicitly compare the Plaintiff's migraine issues with Listing 11.02B, he was not required to do so. As discussed above, an ALJ's determination as to whether a claimant satisfies a listing may be implied from the record. *See Davenport*, 403 F. App'x at 354 (citing *Hutchison*, 787 F.2d at 1463); *see also Stacy v. Comm'r, Soc. Sec. Admin.*, 654 F. App'x 1005, 1008 (11th Cir. 2016) ("The ALJ need not . . . specifically enumerate the Listings under which [he] is evaluating the claimant's condition[,] . . . so long as the ALJ's finding is implicit in [his] decision.") (citing *Hutchison*, 787 F.2d at 1463).

Here, in his decision, the ALJ acknowledged the Plaintiff's testimony that she had a migraine about once every two weeks, which—as explained above—is too

infrequent to the meet Listing 11.02B's criteria.  (R. 26, 59–60).  The ALJ also recounted the Plaintiff's treatment for migraines between 2020 and 2021 with several medications.  (R. 27–28).  In addition, as described previously, the ALJ noted that the Plaintiff had not received any further treatment for her migraines after July 2021, which again was only a month after her filing date.  (R. 30, 347–51, 413–18).  And finally, the ALJ expressly stated that the Plaintiff "d[id] not have an impairment or combination of impairments that me[t] or medically equal[ed] the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (R. 23).  On this record, it can be fairly implied that this determination incorporated a finding by the ALJ that the Plaintiff's migraine impairment did not meet or medically equal Listing 11.02B.  It is also evident from the whole of the ALJ's decision that this finding is adequately substantiated by the record.

IV.

In light of all the above, it is hereby ORDERED:

1.      The Commissioner's decision is affirmed.

2.      The Clerk is directed to enter Judgment in the Defendant's favor and to close the case.

SO ORDERED in Tampa, Florida, this 30th day of March 2026.

HONORABLE CHRISTOPHER P. TUITE
United States Magistrate Judge

25

Copies to:
Counsel of record